In the Matter of JAMES R. ELLIS, as President of the Yonkers Committee for Peace, Appellant, against JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Respondent.

Third Department, July 23, 1957.

*Emanuel Redfield* for appellant.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for respondent.

FOSTER, P. J.  Petitioner in this proceeding is the president of an organization known as the Yonkers Committee for Peace. The proceeding is one under article 78 of the Civil Practice Act to review a decision of the Commissioner of Education which dismissed an appeal of petitioner from the action of the Board of Education of the City School District of the City of Yonkers in refusing to allow petitioner's organization the use of a school building.  The petition herein was dismissed on the merits by an order of the Supreme Court, Albany County, and the present appeal is from that order.

School buildings are not public places in the sense that the use thereof may be demanded as a matter of right by any individual or organization as a forum for public or private discussions.  However the law of New York gives to school authorities discretion to permit the use of school buildings for such purposes (Education Law, § 414).  Despite this discretionary power it is conceded by respondent that school authorities may not deny to one organization the use of school buildings and permit such use to other organizations in the same category, all factors being reasonably equal. This appears to be plain common sense.  School authorities may, if they choose, close the door to all outside organizations, but if they open the door they must treat alike all organizations in the same category.

Petitioner alleged that the board of education involved here permitted the use of school property by organizations similar and comparable to his organization for the purpose of public assembly and discussion. He cited as examples the Southwestchester Chapter of the Americans for Democratic Action; Lodge No. 9, B'Nai B'rith; Henry Jones State Lodge and the American Labor Party.  No proof was taken as to whether such organizations were in the same category as petitioner's organization.  Petitioner's application was denied by the board of education, and the denial affirmed by the respondent Commissioner of Education, on the theory that the board knew that a previous meeting of petitioner's organization, held elsewhere, had caused strife and dissension in the community; and, in addition, the board knew that petitioner had, through his business firm (petitioner is in the linoleum business) placed advertisements in communistic periodicals.  It is argued here for respondent that to succeed upon the theory of discrimination petitioner was obliged to plead, in order to place his organization in the same category as those mentioned, that meetings of the latter had also caused strife and dissension in the community.  This argument appears to us to be too tenuous to

sustain the order appealed from. A school board of course is not a censor, and its duty so far as school buildings are concerned is merely to regulate and protect them. We do not take it that it may discriminate against an organization simply because it, or even a part of the public, may be hostile to the opinions or program of such organization provided the same are not unlawful per se. If fair proof is presented that a clear and present danger exists that public disorder and possible damage to the school property will result from a proposed use then we think the board would be within its discretionary power to deny such a use. Justifiable exclusion is not discrimination. But these are matters that cannot be properly resolved upon affidavits and pleadings, at least on the kind presented here. Somewhere there should be a trial of such issues, and in this case that should lie with the Special Term. (*Matter of O'Brien v. Commissioner of Educ.*, 3 A D 2d 321).

It is also argued by respondent that his decision in the matter is not subject to review in the courts under section 310 of the Education Law. We might be inclined to agree with this argument if the matter was purely an educational one but in our view it is not. Something more is involved. A previous application made by petitioner went its way through the State courts, and the Supreme Court of the United States, by a divided vote, ultimately denied certiorari and determined that petitioner in order to raise a constitutional question would have to allege that the board had permitted comparable organizations to use the school property for the purpose of speaking (*Ellis* v. *Dixon*, 349 U. S. 458). In this proceeding petitioner has made that very allegation, and hence we are bound to say that a constitutional issue of discrimination is presented. Moreover, and without reference to any decisions, an act that is discriminatory is generally considered to be arbitrary. Thus we think this proceeding involves issues that are reviewable in the courts.

The order should be reversed and the matter remitted to the Special Term to take proof.

BERGAN, J. (dissenting). The effect of remitting the proceeding to the Special Term to take proof is that a judge will decide whether organizations such as Lodge No. 9, B'Nai B'rith, the Henry Jones State Lodge, the Southwestchester Chapter of Americans for Democratic Action, for example, which have been allowed to use the Yonkers schools for meetings " are in the same category " as the Yonkers Committee for Peace, which has been refused use of the schools, on behalf of which the petitioner maintains this proceeding. Even if the Judge

reaches the conclusion that these organizations are in the same category he will then be required to decide that the commissioner was so far wrong in his view of dissimilarity that his decision was arbitrary and unreasonable. The Judge would not be able to hold this merely because he might differ with the commissioner on the issue of similarity; but could annul the determination only if he held that no reasonable man would make the determination the commissioner did. This is the frame of judicial review in such a case.

When it comes to putting community organisms of the kind involved here into " categories " of similarity or dissimilarity, one moves immediately into the area of subjective judgment. The traditional courtroom trial and adjudication is too limited to offer adequate solution. In the end it will come down to what the judge who hears the case thinks about what relative similarity or difference in these organizations may be. The rule of *stare decisis* or well-worn rules of law are of little help in charting the areas of subjective judgment involved.

That is why it seems to be especially important here that we read section 310 of the Education Law the way the Legislature wrote it, and as it has stood in the statute law of New York for over a century, that when resort has been voluntarily had by a party aggrieved to the appellate jurisdiction of the State Commissioner of Education on a matter internal to the public school system, the commissioner's determination is final and not subject to review. This is especially the case whether there are other direct remedies to a court available, but instead of using them, recourse is taken within the education structure by an appeal to the commissioner. In the original proceeding against the city board of education the court expressly held that a direct judicial remedy was available and properly before the court but that petitioner's papers were insufficient. (*Matter of Ellis* v. *Dixon,* 281 App. Div. 987.)

There was opportunity in the appeal to the commissioner to show the similarity of the organizations permitted to use the schools and the organization which petitioner represents, and it is reasonable to think that nothing of substance will be added to this essentially subjective argument upon a trial. The proof which the court's decision here directs to be taken by the court at Special Term could have been taken before the commissioner. No request was made by petitioner to establish in a trial before the commissioner that the organizations permitted use of the Yonkers school property were comparable with the petitioner's organization. He rested his appeal on his papers. The petitioner's attorney in that proceeding clearly was of opinion that

there was no substantial issue of fact before the commissioner.

In response to the invitation of counsel to the Education Department to present oral argument of the appeal, petitioner's attorney declined; but added that "If you [counsel] believe" that the "issue of fact" raised in respondent's answer before the commissioner "is not frivolous" it will be "necessary" that proof be taken. If petitioner wanted a hearing he should have asked for it in plain terms and not indicated to the department's counsel that he believed the answer frivolous and only if the counsel was of a different opinion and felt it was not frivolous a hearing would be "necessary". Even on this appeal there is no plain statement in the petitioner's brief that there is a triable issue for the Special Term. What petitioner asks for is a final order of annulment based on his constitutional argument. The commissioner's appellate view on the subject, which is not technical law at all but essentially a matter of community judgment, is likely to be as sound as a trial judge's would be.

On the ultimate question whether the decision of the commissioner is to be deemed reasonable or arbitrary, the schools are maintained for public education; and although there is a custom to use some of them also for community meeting and discussion, the school boards in charge of the buildings are entitled to impose limitations on the scope of their use for non-educational purposes. To draw the line between uses which are orderly, peaceful, and harmonious with the general education program; and uses which may be disruptively controversial and which divide the community into hostile areas does not seem unreasonable when it comes to noneducational utilization of public school property.

To draw upon historical examples, no one would have denied the Single Taxers or the Free Silver advocates the right to express their views publicly and at large in the face of violent hostility and derisive opposition. But to encourage this kind of controversy to have full expression in the community forum does not mean necessarily that it must be permitted to have that full expression in the public schoolhouse.

Where the local judgment of the school board is that one use would be so controversial and disruptive as to be harmful to the school and another use would not be harmful; and where this judgment is confirmed on review by the public officer having highest administrative responsibility for the education policy of the State, we ought not readily find that those determinations are so arbitrary that they ought to be undone by the court because the party complaining of the determinations pursues

the argument that the use he proposes will be just as peaceful as those which have been permitted. The court is not equipped to make a better judgment in this field than the Commissioner of Education.

I vote to affirm the order.

COON, HALPERN and GIBSON, JJ., concur with FOSTER, P. J.; BERGAN, J., dissents, in an opinion.

Order reversed, without costs and the matter remitted to the Special Term to take proof.