Chief Judge Fuld.
On June 14, 1965, the Board of Supervisors of Orange County promulgated rules for the use of the courthouses in Goshen and Newburgh for other than judicial purposes. Insofar as relevant, the buildings were made available for such use only by “ political parties, as defined in section 2(4) of the Election Law” — which defines a “ party” as “ any political organization which at the last preceding election for governor polled at least fifty thousand votes for governor.”
The National Renaissance Party (NRP), whose previous requests to use the Newburgh courthouse had been denied, reapplied for a permit in conformity with the new rules. It was again turned down on the ground that the NRP was not a ££ political party.” The petitioner, who is its national director, thereupon brought the present article 78 proceeding to compel the respondents, the Board of Supervisors and the Building Superintendent of Orange County, to issue the requisite permit. Although the petitioner does not expressly state that the NRP is a political party, he does declare (1) that it is “ an unincorporated association which advocates the preservation of American national sovereignty, racial nationalism, and the *173 establishment by constitutional means of a government composed of an intellectual, managerial and military aristocracy ” and (2) that he arranges meetings for its officers and candidates for public office ‘ ‘ to speak on topics of public importance and at which guest speakers may also appear.” It did not, however, poll 50,000 votes in the last gubernatorial election.
The court at Special Term granted the petition and directed issuance of the permit to the NBP. The Appellate Division agreed with Special Term that respondent board’s rules were “ unconstitutionally discriminatory against genuine independent political parties ”. However, because the petitioner had not specifically alleged that the NBP was such an organization, the Appellate Division remitted the matter to Special Term for a hearing on that issue as well as on the issue whether “ expression of [NBP’s] views will immediately and irreparably create injury to the public weal ’ ’.
There is no doubt that the board’s rules governing use of the courthouses for nonjudicial purposes were unconstitutionally discriminatory against small political parties. The county is not obliged to make its buildings available for public gatherings but, when it does so, both State and Federal Constitutions (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11) require that it be done “in a reasonable and nondiscriminatory manner ”. (Brown v. Louisiana, 383 U. S. 131, 143; see, also, East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 133; Matter of Rockwell v. Morris, 10 N Y 2d 721, affg. 12 AD 2d 272.) This means that, if the use is limited to groups of a particular type or in a particular category, there may be no discrimination within the category, and the classification adopted must itself ‘ ‘ rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed ”. (Myer v. Myer, 271 App. Div. 465, 472, affd. 296 N. Y. 979; see, also, Matter of Ellis v. Allen, 4 A D 2d 343, 344, app. dsmd. 4 N Y 2d 693, mot. for lv. to opp. den. 4 N Y 2d 674; Matter of Stracquadanio v. Department of Health, 285 N. Y. 93, 97.) “ The essence of the right to equal protection of the laws is that all persons similarly situated be treated alike.” (Myer v. Myer, 271 App. Div. 465, 472, affd. 296 N. Y. 979, supra.)
In the case before us, the record reveals no justifiable purpose for excluding minor political parties from holding public *174 meetings in the Newburgh courthouse. Furthermore, it was error for the Appellate Division to order a hearing on the issue of whether the NBP is a political party. For political purposes, a “party” is defined as “an organized group of the electorate that attempts to control government through the election of its candidates to office ” (Webster’s New Collegiate Dictionary [6th ed., 1957], p. 613). As the petition makes clear, the NBP calls itself a party; its purposes are of a political and governmental character and it nominates candidates for public office. The denial by respondents in their answer of knowledge or information sufficient to form a belief as to the accuracy of the petitioner’s description of the NBP’s political character was “obviously perfunctory and raised no issue whatever”. (Matter of Auer v. Dressel, 306 N. Y. 427, 431.) Accordingly, since the respondents have alleged no “ evidentiary facts ” to the contrary, a trial on the NBP’s status as a political party is not warranted. (CPLB 7804, subd. [e]; see, also, Matter of Rotkiewicz v. Department of Mental Hygiene, 283 App. Div. 458, affd. 307 N. Y. 847.)
Nor is there any basis for a hearing as to whether the ‘ ‘ expression ” of the NBP’s views will “ immediately and irreparably create injury to the public weal”. No such reason was given by the respondents for denying the NBP a permit, and the only hint of any such issue in the pleadings is an allegation in the petition — 'denied by the respondents in their answer — that members of the Board of Supervisors had charged the NBP and its members with being “fascist” and “subversive”. Even if it were found that the NBP’s political philosophy represented the unpopular views of a small and extreme minority, the petitioner would, nevertheless, be entitled to use the county courthouse.
As this court reaffirmed only a few months ago, “ The expression of controversial and unpopular views * * * is precisely what is protected by both the Federal and State Constitutions. ” (East Meadow Community Concerts Assn. v. Board of Educ., 19 N Y 2d 605, 606; 18 N Y 2d 129, 134, supra; see, also, Bond v. Floyd, 385 U. S. 116, 132-135; Kunz v. New York, 340 U. S. 290; Matter of Rockwell v. Morris, 10 N Y 2d 721, affg. 12 A D 2d 272, supra.) It is an “ unlawful restriction of the constitutional right of free speech ”, we wrote in East Meadow *175 (18 N Y 2d, at p. 134), to exercise prior restraint of the expression of such views ‘ ‘ ‘ unless it is demonstrable on a record that such expression will immediately and irreparably create injury to the public weal — not that such expression, without itself being unlawful, will incite criminal acts in others ’ ’ (Matter of Rockwell v. Morris, 12 A D 2d 272, 277-278, affd. 10 N Y 2d 721, supra.)
We fail to see the remotest possibility, in the case before us, of danger from speeches delivered in a room inside a courthouse building to a presumably sympathetic audience. No one has suggested that the NRP intends to advocate the use of violence as a means of achieving its objectives or that a “ clear and present danger” exists that the audience would immediately act to implement such an unlawful proposal. (See, e.g., People v. Epton, 19 N Y 2d 496.) Nor does anticipated opposition by certain veterans’ groups to the NRP and its program present a hazard of “ immediate and irreparable injury to .the public weal.” Were there to be a disturbance, the fault would surely lie with those who objected to the views expounded and not with the speakers or the sponsoring NRP. It has been well said that ‘ ‘ the measure of the speaker is not the conduct of his audience. ’ ’ (Matter of Rockwell v. Morris, 12 A D 2d, at p. 279.)
In short, there is nothing in the record to justify censorship of the NRP upon the basis of possible public injury — to be inflicted by the speakers and not by their audience — and we do not believe that the Appellate Division, on its own initiative, may call for an investigation which, in a roundabout manner, imposes a restraint on the constitutional right to free expression.
The order of the Appellate Division should be reversed and the judgment of Special Term reinstated, with costs in this court and in the Appellate Division.
Judges Van Voorhis, Burke, Bergan, Keating and Breitel concur with Chief Judge Fuld; Judge Scileppi dissents and votes to affirm on the memorandum at the Appellate Division.
Order reversed, etc.