Leon D. Lazer, J.
In this article 78 proceeding, petitioner, the Stony Brook unit of the Civil Service Employees Association, Inc. (CSEA) seeks to enjoin respondent State University of New York at Stony Brook and its president, John S. Toll, from providing a rival union facilities in which to conduct a meeting in violation of the collective bargaining agreement between the State and the CSEA. Although the meeting was stayed by a temporary restraining order the issue of such a meeting has not been mooted and the parties seek an adjudication.
*335 Section 4.4(b) of article 4 of the contract between the State and the CSEA provides that: "No other employee organization except employee organizations which have been certified or recognized as the representative for collective negotiations of other State employees, shall have the right to meeting space in State facilities.”
The CSEA asserts that respondents have given permission to members and organizers of Hospital Workers Union 1199 (Union 1199), a rival union, to speak at a meeting to be held on campus and has permitted posters advertising the event to be posted on university bulletin boards.
The university does not contest the validity of the contract provision but asserts that it is inapplicable because the proposed meeting is not sponsored by Union 1199. Instead, it was organized by the Stony Brook branch of the Medical Committee for Human Rights, an organization composed of students at the Stony Brook Health Services Center and of undergraduates interested in the problems of health care and delivery of health services. Union 1199 was invited to appear at the meeting and express its views with respect to the strike of hospital workers at Long Island Jewish Hospital in which it was involved and which is of especial interest to the students because the hospital is the clinical campus of the university’s Health Services Center. At the time of the strike students were faced with the dilemma of whether or not to cross the picket lines. The university contends that to deny the committee meeting facilities would be to violate principles of academic freedom and freedom of inquiry.
The CSEA’s construction of the contract places the university in the position of choosing between violating the agreement and violating its constitutional obligations as an arm of the State. Under the doctrine enunciated in Tinker v Des Moines Ind. Community School Dist. (393 US 503), students are "persons” under the Constitution and are guaranteed rights under the First Amendment. The Medical Committee for Human Rights is not registered with the university (an oversight apparently since the group has been in existence on the Stony Brook campus for some time) but even so it must be afforded at least the same protection the Constitution affords all groups seeking use of government facilities. The university has no obligation to make its facilities available to unaffiliated organizations, but if it does so it is required by the Fourteenth Amendment and by section 11 of article I of the State Consti *336 tution to administer its regulations in a nondiscriminatory manner with equality for all (East Meadow Community Concerts Assn. v Board of Educ. of Union Free School Dist. No. 3, Nassau County, 18 NY2d 129; see, also, Matter of Madole v Barnes, 20 NY2d 169; Matter of Rockwell v Morris, 10 NY2d 721; Matter of Ellis v Allen, 4 AD2d 343, app dsmd 4 NY2d 693, mot for lv to app den 4 NY2d 674; Matter of Buckley v Meng, 35 Misc 2d 467; Brown v Louisiana, 383 US 131). The First Amendment denies the government the power to restrict expression because of its message, its ideas, its subject matter or its content (Police Dept. of Chicago v Mosley, 408 US 92) and once school administrators elect to make facilities available to outside organizations they may not act as censors (Matter of Ellis v Allen, supra).
If the contract between the CSEA and the State precludes the university from granting equal use of its facilities to outside organizations for purposes unrelated to union organizing efforts it is a fortiori discriminatory and cannot stand. An agreement which violates a provision of the Constitution is illegal and void (Peabody & Co. v Travelers Ins. Co., 240 NY 511). However, a construction is favored which renders the contract valid (O’Neil Supply Co. v Petroleum Heat & Power Co., 280 NY 50) and the law will not presume that the parties intended to make an illegal contract (Richards v Wiener Co., 207 NY 59). Section 4.4(b) of article 4 of the agreement at issue here must be construed to apply only to meetings sponsored by rival unions for the purpose of organizing employees represented by CSEA since under the provisions of the Civil Service Law (§ 208, subd 2), CSEA has a right to unchallenged representation. The court will not otherwise restrict the university’s constitutional obligation to exercise its right to make facilities available to outside groups in a nondiscriminatory manner.
The petition is dismissed.