KEVIN M. TRIETLEY, an Infant, by MYRNA K. TRIETLEY, His Parent, et al., Appellants, v BOARD OF EDUCATION OF THE CITY OF BUFFALO et al., Respondents.

Fourth Department, November 10, 1978

### APPEARANCES OF COUNSEL

*Michael J. Brown* for appellants.

*Joseph P. McNamara, Corporation Counsel (William E. Carey* of counsel), for respondents.

### OPINION OF THE COURT

MOULE, J.

The question presented on this appeal is whether the Board of Education of the City of Buffalo must grant a request made

by a member of the clergy and petitioners, six high school students, for permission to form bible clubs in Buffalo public schools.

In a letter dated December 2, 1977, Reverend Byron Lutz of the Sycamore Tree Youth Center and petitioners requested permission from the Buffalo Board of Education to form bible clubs at Burgard, Kensington and McKinley High Schools[1] in the City of Buffalo. This letter contained proposed guidelines for the establishment of the bible clubs. The guidelines provided: that each club must choose as officers, a bible reading chairman, a recording secretary and a memory verse chairman; that club membership must be voluntary and each club and meeting must be led by students, with no meeting dominated by any one person; that the clubs must have at least one teacher volunteer as an advisor who would attend and supervise meetings; that each club must be interdenominational; that meetings must be conducted before or after the official school class day for no longer than 15 minutes, in a place which would not interfere with the conduct of normal school activities; that the meetings would not be for socializing or the discussion of churches or church doctrines; and that each club "must be an asset to the school, providing moral and spiritual assistance to the students." The letter further stated that the proposed clubs would follow criteria established for other clubs or student organizations presently existing in the Buffalo public high schools and would adhere to other reasonable requirements imposed by the Buffalo Board of Education or Superintendent of Schools.

The Superintendent of Schools, relying upon a written opinion of the Buffalo Corporation Counsel,[2] recommended to the board of education that permission to form bible clubs in the Buffalo public schools be denied. The board of education approved the recommendation of the Superintendent of Schools and denied permission to form bible clubs in the schools.

Petitioners, by their parents, brought this proceeding pursu-

1. Petitioners Kevin M. Trietley and Fred Cox are students at Burgard High School; petitioners Marjorie Shorthouse and Laurie A. Pierce at Kensington High School; and petitioners Daniel G. Shorthouse and Jeffery Smith at McKinley High School.

2. This opinion, dated October 27, 1977, resulted from an earlier request by Reverend Lutz to establish bible clubs which apparently was made to the principal of McKinley High School. The Corporation Counsel determined that the establishment of bible clubs within public school facilities would violate the First Amendment of the United States Constitution.

ant to CPLR article 78, by service of an order to show cause and petition for a judgment compelling respondents Board of Education and the Superintendent of Schools of the City of Buffalo to permit them to form bible clubs at the three public high schools under the guidelines set forth in the letter of December 2, 1977. In the petition it was asserted that many other student organizations[3] are permitted to function freely in Buffalo public high schools and that these organizations conduct meetings and other activities in order to provide for the interchange of ideas and for the character and moral development of their student members. Petitioners alleged that the purpose of their bible clubs "is to accommodate the religious interest and to provide moral and spiritual assistance to the students;" that in each high school there were at least 30 students who wished to participate in the proposed bible clubs; and that there was at least one full-time faculty member willing, voluntarily, to moderate and supervise each club. As a result, petitioners claimed that the denial of their request to form bible clubs was arbitrary and capricious and violated their rights under the First and Fourteenth Amendments of the United States Constitution and sections 3 and 11 of article I of the New York State Constitution. Special Term denied the petition and petitioners have appealed.[4]

■ Subdivision 1 of section 414 of the Education Law provides in part that schoolhouses, the grounds connected therewith, and all property belonging to a school district shall be in the custody and under the control and supervision of the board of education of the district. Under this section, the board of education may adopt reasonable regulations and permit the use of schoolhouses and schoolrooms for enumerated purposes when they are not in use for school purposes if, in the opinion of the board, such use will not be disruptive of normal school operations (Education Law, § 414, subd 1, pars [a]-[h]). The expressed purpose of petitioners' bible clubs is the accommodation of the religious interests of its members and the provision of moral and spiritual assistance to them. Reli-

---

3. Respondents admitted that among these other organizations are foreign language, English, science, mathematics, chess, fashion and Red Cross clubs as well as drill, swim, football, basketball and hockey teams and booster clubs, cheerleaders and yearbook staffs.

4. Although petitioners were granted leave to appeal, it is clear that the order dismissing their petition is properly termed a final judgment (CPLR 411, 5011, 7806). As such, it is appealable as of right under CPLR 5701 (subd [a], par 1). (See 7 Weinstein-Korn-Miller, NY Civ Prac, pars 5701.01, 5701.26a.)

gious purposes are not included in the enumerated purposes for which a school may be used under section 414 of the Education Law (cf. *Lewis v Board of Educ.,* 157 Misc 520, 525-526, mod on other grounds 247 App Div 106). Consequently, the board of education had no authority to grant petitioners' request to form bible clubs in the public high schools.

■ Even if we were to assume that the board of education possessed statutory authority to permit petitioners' proposed bible clubs to use the public schools for religious purposes, nevertheless, the board was not required to exercise its discretion to grant such permission. As was stated in *Stein v Oshinsky* (348 F2d 999, 1002, cert den 382 US 957), the "[d]etermination of what is to go on in public schools is primarily for the school authorities." Moreover, given the discretionary power to control the use of schoolrooms, the board of education has the concomitant power to make reasonable classifications concerning the extent to which schools will be available for nonschool purposes (see *Ellis v Dixon,* 349 US 458, 460, reh den 350 US 855). It is petitioners' burden to show that the board of education has exercised its discretion differently from the requests of other organizations of a similar character (see *Ellis v Dixon, supra,* pp 460-461; *Matter of Ellis v Allen,* 4 AD2d 343, 344, app dsmd 4 NY2d 693, lv to app den 4 NY2d 674). Petitioners have neither alleged nor shown that any other organization similar in character to their proposed bible clubs has been granted permission to use public school facilities for religious purposes. Therefore, the determination of the board of education to exclude petitioners' religious activities from public high schools was neither arbitrary nor capricious.

We conclude that the board of education had no statutory authority to permit petitioners to use the public schools for religious purposes and that, in any event, its discretionary decision to exclude all organizations formed for such purposes is one with which we should not interfere. Nevertheless, inasmuch as the board of education's principal reason for denying petitioners' request to form bible clubs was that the granting of such a request would violate the First Amendment of the United States Constitution, we find it necessary to consider the constitutional issues.[5]

---

5. No question has been raised concerning the propriety of an article 78 proceeding to test the constitutionality of the board of education's determination. It is settled, however, that such a proceeding may be utilized to obtain review of a board of

*(n. contd.)*

■ The mandate of the First Amendment of the United States Constitution that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof" has been made wholly applicable to the States by the Fourteenth Amendment *(Abington School Dist. v Schempp,* 374 US 203, 215). A determination by a board of education, the entity which is charged with the supervision of public schools pursuant to statutory authority, constitutes State action within the scope of these amendments (see *Abington School Dist. v Schempp, supra; Johnson v Huntington Beach Union High School Dist.,* 68 Cal App 2d 1, cert den 434 US 877).

■ In deciding whether the proposed bible club meetings in public high schools would violate the establishment clause of the First Amendment, we must examine the three tests articulated by the court in *Lemon v Kurtzman* (403 US 602). Under the establishment clause, the proposed State action (1) must have a secular purpose; (2) must have a principal or primary effect that neither advances nor inhibits religion; and (3) must not foster an excessive governmental entanglement with religion. These tests have not been met where portions of the bible were read without comment at the beginning of the school day, notwithstanding individual students could be excused upon parental request *(Abington School Dist. v Schempp, supra).* Similarly, the establishment clause forbids a board of education from composing a prayer to be read in its schools even though students are compelled neither to recite nor hear it *(Engel v Vitale,* 370 US 421). Furthermore, while a school board may encourage sectarian religious instruction by planning its schedule of activities to accommodate an outside program of religious instruction, it may not turn over its own classrooms for this purpose during regular school hours (cf. *Zorach v Clauson,* 343 US 306, with *McCollum v Board of Educ.,* 333 US 203).

■ In the present case the conceded purpose of petitioners' bible clubs is religious in nature. Moreover, although there may be incidental secular benefits, the primary effect of the bible clubs is the advancement of the religious philosophy contained in the bible. Additionally, in the event the proposed clubs are permitted to meet and conduct activities in high

---

education's action where it is challenged upon constitutional grounds *(Matter of Strippoli v Bickal,* 21 AD2d 365, 369, affd 16 NY2d 652). Therefore, the constitutional issues presented on this appeal are properly before us.

schools, State financial support would flow directly to the club in the form of rent-free classroom space and facilities, heat, lighting and other connected expenses. More importantly, the degree of supervision by the board of education which would be required to ensure that the bible clubs are conducted in accordance with the proposed guidelines constitutes excessive governmental entanglement with religion. Without constant supervision, these bible clubs readily could become exclusively sectarian classes in religious instruction within the publicly supported school system. Accordingly, the proposed activities would go beyond merely accommodating the religious interests of petitioners and would transgress the principle of governmental neutrality expressed in the establishment clause of the First Amendment.

■ Finally, we reject petitioners' contention that their First Amendment rights of free exercise of their religion and freedom of expression and association, their Fourteenth Amendment rights of equal protection of the law, and their rights under sections 3 and 11[6] of article I of the New York State Constitution have been violated by the board of education's refusal of their request to form bible clubs. To show a violation of the free exercise clause, one must show that the challenged governmental activity has a coercive effect as it operates against him in the practice of his religion (see *Abington School Dist. v Schempp,* 374 US 203, 223, *supra).* Here, petitioners are free to pursue their religious beliefs; they are only prevented from enlisting the aid of the public school system to do so. In addition, school buildings are not public places in the sense that their use may be demanded as a matter of right by an individual or organization as a forum for public or private discussions *(Matter of Ellis v Allen,* 4 AD2d 343, 344, *supra;* see *Poulos v New Hampshire,* 345 US 395, 405; *Stein v Oshinsky,* 348 F2d 999, 1001, *supra).* Furthermore, inasmuch as petitioners do not allege that the board of education has permitted organizations similar to the proposed bible clubs to use the public school facilities, petitioners' rights to equal protection of the law have not been infringed (see *Ellis v Dixon,* 349 US 458, 460, *supra).*

Accordingly, the judgment should be affirmed.

---

6. These provisions of the New York State Constitution declare that "[t]he free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed" (art I, § 3) and that "[n]o person shall, because of * * * religion, be subjected to any discrimination in his civil rights" (art I, § 11).

MARSH, P. J., SIMONS, SCHNEPP and WITMER, JJ., concur.

Judgment unanimously affirmed, without costs.