OPINION OF THE COURT
Albert H. Buschmann, J.
In this declaratory judgment action defendants move for summary judgment. Plaintiff by cross motion moves for the same relief.
This action arose as a result of an application filed by Ridgewood Savings Bank with defendant Banking Department for permission to open a branch office in Middle Village. Plaintiff, a State chartered savings and loan association with the largest of its three branch offices located in Middle Village, seeks to permanently enjoin the granting of the applica *284 tion on the ground that the proposed branch would be in direct competition with, and severely detrimental to, the operation and viability of its Middle Village office. The gravamen of the complaint is that the regulations promulgated by defendant Banking Board, pursuant to section 14 of the Banking Law, are invalid insofar as they provide two separate and distinct policies for savings banks and savings and loan associations (3 NYCRR Banking, SB 2 and SL 2, respectively) with respect to branching requirements. Supervisory Policy SB 2 requires that an application for a new savings bank branch demonstrate that the new branch shall be not less than 1,000 feet from the nearest savings bank office, that it will be in a "service area” of not less than 15,000 persons and that there will be a population of at least 15,000 persons in the "service area” of every adjacent savings bank office. The policy does not provide that any consideration be given to the location or service area of existing savings and loan associations. The certificate of merit, which Ridgewood filed with its application, indicated that the proposed branch would be located eight blocks from plaintiffs Middle Village office and that its service area would encompass both plaintiffs branch and a branch of Astoria Federal Savings and Loan Association. Were these existing institutions considered, the service area of each of the banking organizations in Middle Village would contain a population of less than 11,000 persons.
Plaintiff contends that in failing to consider the competitive impact of a savings bank branch upon a savings and loan association branch, the regulations violate the stated policy of the Banking Law of eliminating destructive competition among all banking organizations. It further contends that by establishing two separate policies with respect to branching, defendant Banking Board has drawn an arbitrary distinction between the two types of banking institutions and has thereby deprived plaintiff of its equal protection and due process rights. Defendants contend that there is a rational basis for distinguishing between the two types of organizations and that as such the regulations violate neither the stated statutory policy nor plaintiffs constitutional rights.
Ordinarily, the construction given to statutes or regulations by the agency responsible for their administration will be upheld if not irrational or unreasonable (Matter of Bernstein v Toia, 43 NY2d 437, 448; Ostrer v Schenck, 41 NY2d 782, 786; Matter of Howard v Wyman, 28 NY2d 434, 438). An *285 agency in interpreting the statute, however, may only promulgate regulations which further implement the law as it exists; it has no authority to create regulations out of harmony with the statute (Ostrer v Schenck, supra, p 785; Matter of Jones v Berman, 37 NY2d 42, 53). The court’s function, then, is to determine whether the agency in promulgating its regulations has exceeded its authority or disregarded the statutory standards (Matter of Dairylea Coop, v Walkley, 38 NY2d 6, 12). In the instant action the question must be answered in the affirmative.
The Banking Law expressly provides that it shall be the policy of the State to eliminate unsound and destructive competition among banking organizations (Banking Law, § 10), and defines "banking organizations” to include savings banks and savings and loan associations (Banking Law, § 2, subd 11). The same terminology "banking organizations” is used in both the section which empowers the banking board to promulgate regulations as to branching (Banking Law, § 14, subd 1, par [g]) and the section which provides the procedure for approval of branch applications (Banking Law, § 29). At no point in the statutory branching provisions is a distinction drawn among the types of banking organizations nor is the authority provided to draw such distinctions. Defendant banking board has thus exceeded its authority by creating a distinction not found in or authorized by the statute (see Matter of Jones v Berman, 37 NY2d 42, 53, supra).
The principles of statutory interpretation generally require an examination of the statute’s legislative history when determining the statute’s meaning and scope (New York State Banker’s Assn. v Albright, 38 NY2d 430, 434; Rankin v Shanker, 23 NY2d 111, 114). Such an examination discloses that the Legislature, in response to the enactment of the Federal Bank Holding Company Act of 1956, issued a policy statement which provided in part: "that appropriate restrictions be imposed to prevent statewide control of banking by a few giant institutions * * * that healthy and nondestructive competition be fostered among all types of banking organizations * * * that statutory home office protection for small unit banking organizations be preserved and extended”. (L 1961, ch 146, § 1.) In view of this policy statement it is apparent that the Legislature has consistently intended that, but for certain specified instances where the banking board has no discretionary power (see Banking Law, § 240, subd 2, par [b]; § 396, subd *286 2, par [b]), the board is to exercise its discretion in a manner which places all banking organizations in the same group for the purposes of evaluating the competitive impact of one financial institution upon another. To determine otherwise would be to misconstrue the clear unambiguous language of section 10 of the Banking Law and defeat the legislative policy as expressed in 1961. Thus, insofar as the regulations permit the granting of an application for a new branch of one type of banking organization without considering its competitive impact on other existing banking organizations, and as defendants have shown no rational basis which would tend to support their statutory interpretation, the regulations are invalid as violative of the stated statutory purpose.
As to the constitutional issue, it is established that an economic distinction will not violate equal protection or due process rights so long as it is rationally related to the desired objective of the statute which creates the distinction (Matter of Bernstein v Toia, 43 NY2d 437, 446, supra; Montgomery v Daniels, 38 NY2d 41, 55; Matter of Madole v Barnes, 20 NY2d 169, 173). The establishment of two separate supervisory policies, therefore, may only be sustained if such is rationally related to the stated objective of avoiding unsound and destructive competition among banking organizations (see Banking Law, § 10; 3 NYCRR, Supervisory Policy SB 2, § 2.1; 3 NYCRR, Supervisory Policy SL 2, § 2.1). Defendants’ contention that such a rational basis may be found in the public’s preference for savings banks over savings and loan associations is without merit. On the contrary, the fact that the public may prefer one type of banking organization to another only serves to further substantiate the necessity of evaluating the competitive impact of a new savings bank branch upon an existing savings and loan association branch, so as to avoid any possibility that the preference for the former will become destructive to the latter. While it is true that the public should be afforded a choice among banking institutions this choice should not be made available in a manner which operates to the detriment of any one type of banking organization. The contention that the use of a uniform policy would result in an unfair advantage to Federally chartered savings and loan associations is also without merit (see Hempstead Bank v Smith, 540 F2d 57). While there may in other instances be a rational basis for distinguishing between savings banks and savings and loan associations, defendants have *287 failed to show any rational basis for so distinguishing with respect to branching policy.
Accordingly, defendants’ motion for summary judgment is denied and plaintiffs cross motion for summary judgment is granted.