852 F.2d 676
 48 Ed. Law Rep. 117
 DEEPER LIFE CHRISTIAN FELLOWSHIP, INC., Appellee,
v.
BOARD OF EDUCATION OF the CITY OF NEW YORK, Colleen
Edmondson, and District 27 Community School Board,
Appellants.
Attorney General of the State of New York, Intervenor.
 No. 1054, Docket 87-9021.
 United States Court of Appeals,
Second Circuit.
 Argued May 3, 1988.
Decided July 21, 1988.
 
 Edward F.X. Hart (Peter L. Zimroth, Corp. Counsel of the City of New York, Leonard Koerner, of counsel), for appellant Board of Educ.
 Kevin McGill, Clifton Budd Burke DeMaria, New York City (Carlyle M. Dunaway, Jr., Clifton Budd Burke & DeMaria, Robert K. Skolrood, Douglas W. Davis, Paul S. McConnell, The National Legal Foundation, Virginia Beach, Va., Curtis & Shain, Massapequa, N.Y., of counsel), for appellee Deeper Life Christian Fellowship, Inc.
 Marion R. Buchbinder, Asst. Atty. Gen. (Robert Abrams, Atty. Gen. of N.Y., Lawrence S. Kahn, Deputy Sol. Gen., of counsel), for intervenor.
 Stanley Geller, New York City, for amicus curiae Committee for Public Educ. and Religious Liberty.
 Before LUMBARD, OAKES, and KEARSE, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 This case presents a conflict between the free speech and establishment of religion clauses of the First Amendment. Appellee, Deeper Life Christian Fellowship, Inc. ("Deeper Life"), a New York religious corporation, argues that denying it the use of a public elementary school building during nonschool hours is unconstitutional content-based regulation of speech. Appellants, the New York City Board of Education and the local school board, on the other hand, argue that to permit the church access to the school premises would create an unconstitutional establishment of religion and would violate New York Education Law Sec. 414 (McKinney 1988).[1] The question comes before us in the form of an appeal from a grant of a preliminary injunction requiring appellants to issue a use permit to Deeper Life pending further court order. Solely on the basis that the case presents a fair ground for litigation and that the balance of hardships favors appellee, we affirm.
 
 BACKGROUND
 
 2
 Deeper Life, a nonprofit corporation organized under the laws of the state of New York, is a fundamentalist Christian church located in Richmond Hill, New York, within the public school district overseen by appellant District 27 Community School Board ("School Board"). When Deeper Life undertook renovations of its church headquarters, it applied to the School Board for and received a permit to use the district elementary school building, P.S. 60, from 8:00 a.m. until 5:00 p.m. on four consecutive Sundays beginning September 13, 1987. At the time of application Deeper Life advised the School Board that it would need to use the school for an additional six to eight months after the expiration of the first permit. Flyers were distributed in the surrounding community advertising that Deeper Life was offering worship services, children's church services, and a Sunday school at P.S. 60.
 
 
 3
 The Monday following appellee's first use of the school property, Colman Genn, the Community Superintendent of District 27, allegedly received complaints from the Woodhaven Residents' Block Association about the use of the school for religious services and the number of illegally parked cars in the area. As a result of the complaints, an inquiry was begun which revealed that Deeper Life was using P.S. 60 to conduct religious worship, instruction, and fundraising. Appellant Board of Education of the City of New York ("Board of Education") concluded that these activities violated New York State Education Law Sec. 414 and especially subparagraph (d) thereof.[2] When appellee applied for a renewal of its permit, Superintendent Genn denied the application, citing the impermissible use of the school for religious purposes.
 
 
 4
 In response Deeper Life brought this action in the United States District Court for the Eastern District of New York alleging, inter alia, that the refusal of the School Board to renew the permit was unconstitutional because it was based upon Deeper Life's being a fundamentalist black church. Deeper Life asserted that the failure to renew the permit would cause irreparable injury and that the church would be unable to conduct its weekly Sunday meetings resulting in a decline in membership and contributions and, ultimately, default and foreclosure of the mortgage on the church's property. The district court granted a temporary restraining order directing the School Board to permit Deeper Life to use P.S. 60 for four Sundays beginning October 11, 1987. On November 2, 1987, the district court, Edward R. Korman, Judge, conducted a hearing on Deeper Life's motion for a preliminary injunction. The court, relying primarily on the Supreme Court's decision in Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), granted the motion, compelling the School Board to issue Deeper Life a permit to use P.S. 60 pending further court order.
 
 DISCUSSION
 
 5
 In order to obtain a preliminary injunction an applicant must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979) (per curiam).
 
 
 6
 We agree with the district court that appellee has demonstrated that irreparable harm would ensue from the refusal to renew its permit to use P.S. 60. As Judge Korman found, absent an injunction, Deeper Life would be without a place in which to conduct services for a substantial period of time. As the Supreme Court stated in Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976), "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."
 
 
 7
 In applying the second part of the analysis, we conclude that the district court reached the correct result, although we do not agree with its analysis. The district court believed its ruling was "compelled" by the Supreme Court's decision in Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). As a result, it did not address intervenor New York State Attorney General's argument that New York Education Law Sec. 414 creates a limited public forum only, and that the State constitutionally may exclude appellee's religious worship, instruction, or fundraising activities.
 
 
 8
 Widmar, however, does not control the result here. As the Supreme Court pointed out in a later case, in Widmar it had "noted that a university campus, at least as to its students, possesses many of the characteristics of a traditional public forum," Cornelius v. NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 803, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985), thereby subjecting attempts at regulating use of the property to the most exacting constitutional standards as to the forum's intended beneficiaries. While the citizenry residing within a school district may be the intended users of the forum at issue here, public elementary schools are not, as to the general community, traditional public fora. See Brandon v. Board of Educ., 635 F.2d 971, 980 (2d Cir.1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981).
 
 
 9
 Under the limited public forum analysis, property remains a nonpublic forum as to all unspecified uses, Cornelius, 473 U.S. at 802, 105 S.Ct. at 3448; Perry Educ. Ass'n v. Perry Local Educs.' Ass'n, 460 U.S. 37, 48, 103 S.Ct. 948, 956, 74 L.Ed.2d 794 (1983), and exclusion of uses--even if based upon subject matter or the speaker's identity--need only be reasonable and viewpoint-neutral to pass constitutional muster. See Board of Airport Comm'rs v. Jews for Jesus, Inc., --- U.S. ----, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987); Cornelius, 473 U.S. at 806, 105 S.Ct. at 3451. See also Greer v. Spock, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (political candidates can be excluded from speaking at a military reservation even though other members of the public are permitted to speak on other subjects); Lehman v. City of Shaker Heights, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (city can exclude political advertising from advertising space in city's transit system); Calash v. City of Bridgeport, 788 F.2d 80, 82 (2d Cir.1986) (for-profit businesses can be excluded from a municipal auditorium available for use only by charitable and nonprofit organizations). For appellee to succeed in the district court, therefore, it must establish that New York State's access policy has created a limited public forum intended to benefit religious organizations such as Deeper Life and encompassing the purposes for which the organization seeks to use the school property. See Calash, 788 F.2d at 84 (state may create a public forum "for use only by certain speakers or for discussion of certain topics").
 
 
 10
 "[C]ritical to a finding that [the State] has created a limited public forum," id. at at 83, is a determination of the State's intent in establishing the forum. By state law, public school buildings may be used by the general public only for the nine purposes enumerated in New York Education Law Sec. 414. The provision of religious worship, instruction, and fundraising is not among these purposes. See Trietley v. Board of Educ., 65 A.D.2d 1, 5-6, 409 N.Y.S.2d 912, 915 (4th Dep't 1978). Moreover, the regulations governing the use of school premises expressly exclude fundraising for, teaching the tenets of, or distributing material promoting a particular religion. Board of Education of the City of New York, Permit Processing Procedure, Fee Schedules, and Rules and Regulations Governing the Extended Use of School Buildings, Special Circular No. 4 (1978-79), Secs. 5.6(c), 5.20, 5.27. Such regulations are also indicative of the State's intent and may limit the availability of a particular forum. See Monterey County Democratic Cent. Comm. v. United States Postal Serv., 812 F.2d 1194, 1198 (9th Cir.1987); American Postal Workers Union v. United States Postal Serv., 764 F.2d 858, 861 (D.C.Cir.1985), cert. denied, 474 U.S. 1055, 106 S.Ct. 792, 88 L.Ed.2d 770 (1986).
 
 
 11
 Nor are the activities of the Deeper Life church really similar to those purposes enumerated in section 414, as appellee argues. The subdivisions of the statute and the Commissioner's decisions (annexed to intervenor's brief) interpreting those provisions demonstrate, as intervenor contends, that access to the school property is permitted only where it serves the interests of the public in general, rather than that of sectarian groups. Appellee argues that because its services are open and widely advertised to the general public, this meets the requirements of section 414. It seems clear, however, that the church's activities are primarily for its own benefit, that is, to increase its membership and raise the funds to pay for its renovations. And while appellee argues that it should come under section 414(1)(a)'s provision that opens the schools "[f]or the purpose of instruction in any branch of education, learning or the arts," the thrust of the statute is to promote general knowledge, rather than to provide a forum for proselytizing or indoctrinating the public in a particular group's beliefs.
 
 
 12
 Nonetheless, according to the record, the School Board has opened this forum to Deeper Life through a practice of granting permits to use public school facilities to other religious organizations. This practice creates a fair ground for litigation that warrants our sustaining the preliminary injunction. A determination of the State's intent in creating a forum is a fact-oriented inquiry, see Brandon, 635 F.2d at 973, and the past practice of the School Board in regard to its use of the property at issue is a proper consideration in that inquiry. See Perry Educ. Ass'n, 460 U.S. at 47, 103 S.Ct. at 956; Calash, 788 F.2d at 83. In holding that a fair ground for litigation exists, we recognize that, arguably, local school boards cannot act in derogation of section 414, see Trietley, 65 A.D.2d at 5-6, 409 N.Y.S.2d at 915, and that when such acts have been challenged, either the State or the Commissioner apparently has sought to enforce the statute. While the district court ought properly to address these arguments when it considers the merits of this case, we cannot say that the district court abused its discretion in granting interim relief to Deeper Life. See Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S.Ct. 2561, 2567-68, 45 L.Ed.2d 648 (1975); Hanson Trust PLC v. ML SCM Acquisition, Inc., 781 F.2d 264, 273 (2d Cir.1986).
 
 
 13
 Appellants contend that renewing Deeper Life's permit will have the primary effect of advancing religion and will also foster excessive government entanglement with religion, in violation of the Establishment Clause. See Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Thus, they argue, even if the school is held to be a public forum, triggering application of strict scrutiny, the regulation is nevertheless constitutional because it is necessary to serve the compelling state interest in complying with the Establishment Clause. Although the district court will have to evaluate this defense when it considers the merits of the case, the issue presents sufficiently serious questions to make them a fair ground for litigation.
 
 
 14
 The cases appellants have cited finding violations of the Establishment Clause all involved speech taking place during school hours when the children were present. Here, by contrast, the speech takes place on the weekend when there is less danger that the children will witness it or, if they do, that they will perceive it as part of their state-sponsored educational program. Although activity taking place during school hours may, in the eyes of impressionable youngsters, appear to bear the imprimatur of the state, see Parents' Ass'n v. Quinones, 803 F.2d 1235, 1241 (2d Cir.1986) (holding that city's plan to provide separate classrooms for Hasidic children posed an unacceptable risk that youngsters would see the city as endorsing Hasidic separatist beliefs), this argument grows weaker when the link between the state and the speech is more attenuated, see McCreary v. Stone, 739 F.2d 716, 727 (2d Cir.1984) (rejecting argument that children would perceive nativity scene in public park as state endorsement of religion, on the ground that there was no evidence in the record to support such a theory), aff'd per curiam by an equally divided Court sub nom. Board of Trustees v. McCreary, 471 U.S. 83, 105 S.Ct. 1859, 85 L.Ed.2d 63 (1985). This court has held that "the semblance of official support is less evident where a school building is used at night as a temporary facility by religious organizations, under a program that grants access to all charitable groups." Brandon v. Board of Educ., 635 F.2d at 978-79. We conclude that there is fair ground for litigation of whether the activity at issue in this case violates the Establishment Clause.
 
 
 15
 In view of its need for a place to hold its meetings until the renovation to its headquarters is completed, the balance of hardships decidedly tips in favor of appellee. This, combined with the fair basis for litigation presented, leads us to conclude that the preliminary injunction should be allowed to stand.
 
 
 16
 Order affirmed.
 
 
 
 [1]
 The Attorney General of New York State appears as an intervenor in this action to defend the constitutionality of New York Education Law Sec. 414
 
 
 [2]
 New York Education Law Sec. 414 provides in relevant part:
 
 
 [1]
 Schoolhouses and the grounds connected therewith and all property belonging to the district shall be in the custody and under the control and supervision of the trustees or board of education of the district.... The trustees or board of education of each district may, subject to regulations adopted as above provided, permit the use of the schoolhouse and rooms therein, and the grounds and other property of the district, when not in use for school purposes or when the school is in use for school purposes if in the opinion of the trustees or board of education use will not be disruptive of normal school operations, for any of the following purposes:
 (a) For the purpose of instruction in any branch of education, learning or the arts.
 (b) For public library purposes, subject to the provisions of this chapter, or as stations of public libraries.
 (c) For holding social, civic and recreational meetings and entertainments, and other uses pertaining to the welfare of the community; but such meetings, entertainment and uses shall be nonexclusive and shall be open to the general public.
 (d) For meetings, entertainments and occasions where admission fees are charged, when the proceeds thereof are to be expended for an educational or charitable purpose; but such use shall not be permitted if such meetings, entertainments and occasions are under the exclusive control, and the said proceeds are to be applied for the benefit of a society, association or organization of a religious sect or denomination, or of a fraternal, secret or exclusive society or organization other than organizations of veterans of the military, naval and marine service of the United States and organizations of volunteer firemen.
 (e) For polling places for holding primaries and elections and for the registration of voters and for holding political meetings. But no meetings sponsored by political organizations shall be permitted unless authorized by a vote of a district meeting, held as provided by law, or, in cities by the board of education thereof. Except in cities, it shall be the duty of the trustees or board of education to call a special meeting for such purpose upon the petition of at least ten per centum of the qualified electors of the district. Authority so granted shall continue until revoked in like manner and by the same body as granted.
 (f) For civic forums and community centers. Upon the petition of at least twenty-five citizens residing within the district or city, the trustees or board of education in each school district or city shall organize and conduct community centers for civic purposes, and civic forums in the several school districts and cities, to promote and advance principles of Americanism among the residents of the state. The trustees or board of education in each school district or city, when organizing such community centers or civil [sic ] forums, shall provide funds for the maintenance and support of such community centers and civic forums, and shall prescribe regulations for their conduct and supervision, provided that nothing herein contained shall prohibit the trustee of such school district or the board of education to prescribe and adopt rules and regulations to make such community centers or civic forums self-supporting as far as practicable. Such community centers and civic forums shall be at all times under the control of the trustees or board of education in each school district or city, and shall be non-exclusive and open to the general public.
 (g) For classes of instruction for mentally retarded minors operated by a private organization approved by the commissioner of education.
 (h) For recreation, physical training and athletics, including competitive athletic contests of children attending a private, nonprofit school.
 (i) To provide child care services during non-school hours, provided that the cost of such care shall not be a school district charge but shall be paid by the person responsible for the support of such child; the local social services district as authorized by law; or by any other public or private voluntary source or any combination thereof.
 The board of education in the city of New York may delegate the authority to judge the appropriateness for uses other than school purposes to community school boards.