**VERBENA UNITED METHODIST CHURCH, et al., Plaintiffs,**

v.

**CHILTON COUNTY BOARD OF EDUCATION, et al., Defendants.**

**Civ. A. No. 91–T–518–N.**

United States District Court, M.D. Alabama, N.D.

May 22, 1991.

Richard A. Lawrence Montgomery, Ala., A. Eric Johnston, Birmingham, Ala. and John Eidsmoe, Montgomery, Ala., for plaintiffs.

David Boyd, Patricia Hamilton, Montgomery, Ala. and John Jackson, Clanton, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

The Verbena United Methodist Church ("the Church"), its pastor, Delbert Freeman, and his daughter, Julia Freeman, have brought this action against the Chilton County Board of Education ("the Board" or "School Board"), challenging the Board's refusal to allow the Church to rent the Verbena High School auditorium to conduct a "baccalaureate service" for graduating seniors and their families.[1] Plaintiffs charge that the School Board's actions threaten to deny them their rights to freedom of speech and free exercise of their religion, as guaranteed by the first amendment to the United States Constitution, and equal protection, as guaranteed by the fourteenth amendment. The cause is now before the court on plaintiffs' motion for a preliminary injunction to require that the Board make the auditorium available for the church service currently scheduled to be held on May 26, 1991. For the reasons set forth below, the court concludes that the motion is due to be granted.

### I.

Until recently, Verbena High School and other high schools in Chilton County, Alabama had for many years traditionally included a religious service as an integral part of their annual commencement exercises for graduating seniors.[2] This ceremony, known as the "baccalaureate service," was normally held on a Sunday within several days of the secular school assembly at which students formally received their diplomas. The baccalaureate service was generally intended to honor the high

---

1. Plaintiffs have also named as defendants the individual members of the Chilton County Board of Education and its superintendent of education, Frank Daniel. However, because, at this stage of the litigation, plaintiffs seek relief from the board members and superintendent only in these defendants' official capacities, the court does not treat them separately, but rather refers to all defendants as the Chilton County Board of Education.

2. Because Verbena is a relatively small community, its high school students, which include those in grades seven through twelve, attend school in the same building as students in the kindergarten through sixth grades.

school's graduates, and characteristically included speeches, prayer, and songs with a Christian theme, organized and presided over by church pastors or other community religious leaders. As with the diploma ceremony, the service took place in the school auditorium and was attended by most of the seniors clad in caps and gowns, family members of these graduates, and school officials.[3]

In August 1989, however, the School Board eliminated this religious component of the commencement program at Verbena and the other county high schools as part of a new policy against "prayer at any school function."[4] The Board was motivated by the Eleventh Circuit Court of Appeals' decision in *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824 (11th Cir.), *cert. denied*, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), in which that court held that the practice of allowing religious invocations prior to high school football games violated the establishment clause of the first amendment. In the wake of the Board's decision, several local churches and individuals in the Verbena community organized an unofficial baccalaureate service, which all graduating seniors and their guests were invited to attend on a purely voluntary basis. Other communities in Chilton County followed suit and organized similar ceremonies for graduates of the county's other five high schools and their families. Such a service was held at the Verbena Baptist Church at the conclusion of the 1990 school year. The evidence shows that somewhere between approximately 15 and 28 Verbena High seniors, out of a graduating class of about 40, were present at the event together with their invited guests and other members of the community.

The organizers of the baccalaureate service in Verbena initially planned to conduct a similar event in the spring of 1991 at the Verbena United Methodist Church.[5] However, they soon realized that neither this nor any of the other local churches would be able to accommodate the crowd expected to attend the service; given that the students in the 1990 graduating class and their guests had experienced considerable difficulty fitting comfortably inside the 115–seat chapel at the Verbena Baptist Church, the similarly-sized Verbena United Methodist Church would likely also be too small for the similar number of graduates and family members invited to this year's service.[6] Accordingly, in March 1991, the Church formally applied to the Board for permission to rent the 750–seat Verbena High School auditorium to host the baccalaureate service on Sunday, May 26, 1991, five days before the official, school-sponsored ceremony at which graduates of Verbena High School will receive their diplomas.[7] As with the 1990 service and previous ones sponsored by the school, the Church planned to include Christian speakers, prayer, and songs in this year's event. The Board normally rented the auditorium to others for $200 a day. However, the Board denied the Church's request in April, and again in early May when the Church reapplied.

The Verbena United Methodist Church responded by filing this action together with a motion for a preliminary injunction to require the School Board to permit the Church to rent the Verbena High School auditorium for the May 26th baccalaureate service. Plaintiffs Delbert Freeman, the Church's pastor, and his daughter, Julia, a graduating senior at the school, joined in the suit.

**3.** School officials encouraged but did not require graduating seniors to attend the diploma ceremony as well as the baccalaureate service.

**4.** *See* defendants' Exhibit 1 (submitted at May 16, 1991 preliminary injunction hearing). Thus, the last school-sponsored baccalaureate service occurred in the spring of 1989.

**5.** The organizers agreed that the site for the service would rotate each year between the

Verbena Baptist Church and the Verbena United Methodist Church.

**6.** Concerns about limited seating may also have discouraged some individuals from attending the 1990 service.

**7.** None of the church groups in other communities in Chilton County have applied to the Board for permission to conduct their baccalaureate services on school premises.

## II.

In order to prevail on their motion for a preliminary injunction, plaintiffs must demonstrate the following: (1) that there is a substantial likelihood they will ultimately prevail on the merits; (2) that they will suffer irreparable harm unless the injunction issues; (3) that the threatened harm to them outweighs whatever damage the proposed injunction may cause the defendants; and (4) that the injunction would not be adverse to the public interest. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988).

### A. *Substantial Likelihood of Success*

At first blush it would appear that, in resolving the dispute between the parties, this court has the seemingly daunting task of drawing not one but two lines, and thus divining a narrow path of permissible conduct, between two closely situated, and often clashing, principles of constitutional law. On one side of the path there is the free speech clause, pressed forward by the Verbena United Methodist Church in an effort to advance not only its right to free speech but also the exercise of that right to the same extent allowed secular groups; and on the other side there is the establishment clause, pressed forward by the School Board in an admirable and all too uncommon attempt to live up to its constitutional obligation to avoid establishment of any religion in its school system.

However, a review of the evidence and settled law reflects that, although the court's task may be lofty, it is not as difficult as would be expected. The court's approach may be summarized as follows. The first issue the court addresses is whether the Verbena High School auditorium is a public forum subject to the dictates of the free speech clause. Although the School Board's attorneys argued in prehearing briefs that the auditorium is not a public forum, the board members made clear through their testimony at the preliminary injunction hearing that they consider the Verbena High School auditorium and all other high school auditoriums in Chilton County to be fully open for public use by all local community organizations, includ-

ing churches, and that, but for the establishment clause, the Board would have allowed the Verbena United Methodist Church to rent the auditorium to conduct the baccalaureate service. The second and seemingly more difficult issue the court addresses is whether the Church's use of the auditorium would nonetheless violate the establishment clause. However, the Supreme Court's recent decision in *Board of Educ. of Westside Comm. Schools v. Mergens*, — U.S. —, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990)—allowing religious student clubs not sponsored by the school to meet on school premises after school hours—offers much guidance as to how the School Board should have responded to the apparent conflict between the free speech clause and the establishment clause posed by the Church's request. Although Justice O'Connor's opinion commanded only a plurality of the members of the court on the establishment clause issue, four other Justices, including Justices Marshall and Brennan, concurred on the issue. Applying the more exacting approach advanced in the opinion written by Justice Marshall and in which Justice Brennan joined, this court is convinced that the particular circumstances presented to the Board did not require that it prohibit the Church's use of the auditorium for a baccalaureate service, but rather required that it and the Church take all additional measures reasonably necessary to disassociate the Board completely from the service.

### i. Free Speech Clause Analysis

It is well settled that "religious worship and discussion," of the sort plaintiffs wish to engage in at the baccalaureate service, "are forms of speech and association protected by the First Amendment." *Widmar v. Vincent*, 454 U.S. 263, 269, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981). *See also Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). Because plaintiffs have selected a government-owned premises as the venue for this event, the extent of the School Board's authority to exclude this activity depends on whether the auditorium is a public or a non-public forum. *See United States v. Kokinda,* —

U.S. ——, ——, 110 S.Ct. 3115, 3119, 111 L.Ed.2d 571 (1990) (plurality opinion by O'Connor, J.); *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 799–800, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985).

■ The Supreme Court has established an exacting standard of review for government regulation of expression on "public property which the State has opened for use by the public as a place for expressive activity.... even if was not required to create the forum in the first place," and, similarly, is "not required to indefinitely retain the open character of the facility." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983).[8] *Accord Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267, 108 S.Ct. 562, 568, 98 L.Ed.2d 592 (1988). Although the government does not create a public forum simply by allowing some speech activities on state-owned premises, such property may be deemed to have been designated a public forum where government officials, by policy or practice, have intentionally made it available for public discourse on a relatively indiscriminate basis. *United States v. Kokinda*, —— U.S. at ——, 110 S.Ct. at 3121. *Accord Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. at 804, 105 S.Ct. at 3450; *Bishop v. Aronov*, 926 F.2d 1066, 1071 (11th Cir.1991).

■ Based on the present record, the court finds that the Verbena High School auditorium and other similar public school facilities in Chilton County have been effectively designated by the School Board as public forums.[9] At a hearing on plaintiffs' motion, there was undisputed testimony from several Board members that the Board's policy is to allow virtually any group to lease the auditoriums at Verbena High and other schools, including churches and other organizations seeking to use the facilities for religious functions.[10] *See Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. at 803, 105 S.Ct. at 3449 (government intent crucial factor in whether property has been designated a public forum). *Accord Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1371 (3rd

---

**8.** In *Perry*, the Court established a three-part framework for evaluating first amendment rights with respect to different types of government-owned premises. To one category, the Court assigned streets, parks, and similar venues that have by long tradition been open to the public for assembly, debate, and other expressive activity. Official efforts to regulate speech in such "quintessential public forums"—as with the second category of "designated" public forums—are subject to strict scrutiny. *Id.* at 45, 103 S.Ct. at 954–55. *Accord United States v. Kokinda*, —— U.S. at ——, 110 S.Ct. at 3119.

Conversely, government property which is not a public forum either by tradition or designation—the third category in *Perry*—is governed by different, less protective standards. "[T]he State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. at 46, 103 S.Ct. at 955. *Accord Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. at 806, 105 S.Ct. at 3451 ("Control over access to a non-public forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral").

**9.** Given testimony that the Verbena High School auditorium is open to the public as a matter of Board policy, it is not crucial for the court to determine whether to confine its analysis to this property, or to consider also the extent to which similar facilities at other public schools in Chilton County have been made available to the public by the Board for expressive activities. Nevertheless, the court believes that because requests to use any of these facilities are conveyed to the Board on a standardized form, and are ultimately decided by it based on the same policies, all such premises, rather than simply the Verbena High School auditorium, constitute the relevant forum in this case. *See United States v. Kokinda*, —— U.S. at ——, 110 S.Ct. at 3121 (treating relevant forum as all sidewalks on Postal Service property); *Deeper Life Christian Fellowship v. Board of Educ. of the City of New York*, 852 F.2d 676, 680 (2nd Cir.1988) (treating relevant forum as all "public school facilities" controlled by New York City Board of Education).

**10.** This is consistent with the Board's written policy on the "use of school facilities" which provides, in relevant part: "The Board believes the functions of school buildings and grounds should be to accommodate approved school programs for students and to assist in meeting the educational, cultural, civic, social, and recreational needs of communities." *See* plaintiffs' Exhibit 2 (attached to Deposition of Frank Daniel, filed May 15, 1991). This regulation does not purport to exclude any type of group or activity from such school facilities.

Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990). This is consistent with the Board's prior practice of making such property readily available to a broad range of community organizations, on an essentially unrestricted basis, for a wide variety of expressive activities including charity fund raisers, social gatherings, and events of a religious nature.[11] *See Widmar v. Vincent,* 454 U.S. at 267–68, 102 S.Ct. at 273; *Concerned Women for America v. Lafayette County,* 883 F.2d 32, 34 (5th Cir.1989); *Deeper Life Christian Fellowship v. Board of Educ. of the City of New York,* 852 F.2d 676, 680 (2nd Cir. 1988).

■ For these same reasons, the court is also not persuaded that the auditorium and similar facilities at other schools constitute only "limited" public forums, the right of access to which has not previously been extended to assemblies like the one the Verbena United Methodist Church wishes to convene.[12] *See Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. at 48, 103 S.Ct. at 956. *See also United States v. Kokinda,* — U.S. at —, 110 S.Ct. at 3121; *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. at 802, 105 S.Ct. at 3449. The baccalaureate service would not be different in kind or character from the other uses of school auditoriums that it has allowed in the past, a number of which have included religious

gatherings. *See Travis v. Owego–Apalachin Sch. Dist.,* 927 F.2d 688, 692–94 (2nd Cir.1991). *Compare Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. at 45 n. 7, 48, 103 S.Ct. at 955 n. 7, 956. Moreover, as stated, the School Board's policy is to rent school auditoriums to almost all kinds of community groups. Instead, as the court discusses further below, the Board has singled out the baccalaureate service only in terms of its public consequences, ones which, unlike other religious uses of school property, purportedly give rise to special, compelling reasons entitling it—indeed, obligating the Board—to deny the Church's application. While such reasons may ultimately be dispositive, they do not determine the type of forum at issue or the corresponding level of scrutiny.

Rather, because the auditorium is a public forum, the court is obligated to scrutinize strictly the School Board's refusal to make it available to the Church. *United States v. Kokinda,* — U.S. at —, 110 S.Ct. at 3119. The only justification advanced by the Board is that permitting the baccalaureate service to take place on school premises threatens to violate the establishment clause, particularly as interpreted in *Jager v. Douglas County Sch. Dist.,* 862 F.2d 824 (11th Cir.), *cert. denied,* 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), which invalidated a practice of having invocations prior to high school football games.[13] Specifically, the Board argues that, if held in the auditorium, the

---

11. The court also notes that it is highly unlikely the primary official function of school facilities like the Verbena High School auditorium would, as a general matter, be disrupted by expressive activities that occur during non-school hours. *See Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. at 803–04, 105 S.Ct. at 3449–50 (Court will not "infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity"); *Gregoire v. Centennial School Dist.,* 907 F.2d at 1377 ("There can be no real dispute, however, that the school facilities, after-hours, are compatible with expressive activity"). *Compare Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (prison); *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (military reservation).

12. A limited public forum—a subcategory of the designated public forum—"is created when the government opens a nonpublic forum but limits the expressive activity to certain kinds of speak-

ers or to the discussion of certain subjects." *Travis v. Owego–Apalachin Sch. Dist.,* 927 F.2d 688, 692 (2nd Cir.1991). *Accord Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. at 45 n. 7, 103 S.Ct. at 955 n. 7. *See, e.g., City of Madison Joint School District No. 8 v. Wisconsin Public Employment Relations Comm'n,* 429 U.S. 167, 185, 97 S.Ct. 421, 426, 50 L.Ed.2d 376 (1976) (school board meeting); *Kaplan v. County of Los Angeles,* 894 F.2d 1076, 1080 (9th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 2590, 110 L.Ed.2d 271 (1990) (voter education pamphlets). The constitutional right of access to a limited public forum "extend[s] only to other entities of similar character." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. at 48, 103 S.Ct. at 956. *See also United States v. Kokinda,* — U.S. at —, 110 S.Ct. at 3121).

13. The minutes of the Board meeting on March 19, 1991, at which it denied the Church's application, indicate that it approved a motion by one of the members "that the Board authorize

baccalaureate service would inevitably be perceived as an event sponsored by the school, and thus as a government endorsement of religion, in light of the recent history of the school's own direct involvement in previous services and the inherently official aura of such a ceremony. Because the denial was therefore based on the Board's judgment as to the religious content of the service and its possible connotations, the Board must demonstrate that the decision was necessary to serve a compelling state interest and narrowly drawn to achieve that end.[14] *United States v. Kokinda*, —— U.S. at ——, 110 S.Ct. at 3119; *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. at 46, 103 S.Ct. at 955. Of course, the interest of the Board in complying with its constitutional obligations under the establishment clause may be characterized as compelling. *Widmar v. Vincent*, 454 U.S. at 271, 102 S.Ct. at 275. *See also Gregoire v. Centennial Sch. Dist.*, 907 F.2d at 1379. It does not necessarily follow, however, that permitting the Church to use the Verbena High School auditorium on an equal access basis with respect to other community groups would in fact be incompatible with the establishment clause.[15] *Id.* It is to this issue that the court now turns its attention.

### ii. Establishment Clause Analysis

■ The first amendment provides that "Congress shall make no law respecting an establishment of religion." In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court refined the principles underlying this proscription into a three-part test.[16] "Under the *Lemon* analysis, a statute or practice which touches upon religion, if it is to be permissible under the Establishment Clause, must have a secular purpose; it must neither advance nor inhibit religion in its principal or primary effect; and it must not foster an excessive entanglement with religion." *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 592, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989). The "primary effect" prong of *Lemon*, the one most frequently relied upon in cases raising establishment clause

---

[Superintendent of Education] Daniel to inform Verbena United Methodist Church that upon our attorney's advice and the rulings of the 11th Circuit Court that we cannot honor this request." *See* plaintiffs' Exhibit 3 (attached to Deposition of Frank Daniel, filed May 15, 1991). *See also* Deposition of Frank Daniel, filed May 15, 1991, at 23.

**14.** Although content-neutral time, place, and manner regulations are permissible even with respect to public fora, *see United States v. Kokinda*, —— U.S. at ——, 110 S.Ct. at 3119; *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. at 45, 103 S.Ct. at 954–55, the Board members who testified at a hearing on plaintiffs' motion acknowledged that its denial of the Church's application was based on the service's content. *See Boos v. Barry*, 485 U.S. 312, 320–21, 108 S.Ct. 1157, 1163–64, 99 L.Ed.2d 333 (1988) (justification which focuses on the reactions to speech of listeners and others is content-based).

**15.** The Board acknowledges that plaintiffs should prevail if the court finds that permitting the service planned by the Church would not violate the establishment clause. Accordingly, the court need not address whether the Board's desire to avoid the appearance of endorsing religion could constitute a compelling state interest even if allowing the service in the school

auditorium did not run afoul of the establishment clause. *See Widmar v. Vincent*, 454 U.S. at 280, 102 S.Ct. at 279–80.

**16.** Despite the fact that the Supreme Court has in recent cases been sharply divided on the proper interpretation of the establishment clause, with some members of the court in favor of abandoning the *Lemon* test, *see, e.g., County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), and although the law in this area appears to be in a state of flux, *see Weisman v. Lee*, 908 F.2d 1090 (1st Cir.1990), *cert. granted*, —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991) (Court agrees to consider whether benediction invoking deity at public school high school graduation violates establishment clause), a majority of the court still adheres to *Lemon*. *See Board of Educ. of Westside Comm. Schools v. Mergens*, —— U.S. ——, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (plurality opinion, O'Connor, J., with Rehnquist, J., White, J., and Blackmun, J.); *id.* at ——, 110 S.Ct. at 2378 (Marshall, J., joined by Brennan, J., concurring); *id.* at ——, 110 S.Ct. at 2383 (Stevens, J., dissenting); *County of Allegheny v. American Civil Liberties Union*, 492 U.S. at 591–93, 109 S.Ct. at 3100. *See also Bishop v. Aronov*, 926 F.2d at 1077 (applying *Lemon* test to resolve establishment clause claim).

issues, is often reformulated into a test of whether the government activity in question is likely to be understood as "endorsing" or promoting religion, irrespective of the government's actual purpose.[17] *Wallace v. Jaffree*, 472 U.S. 38, 56 n. 42, 105 S.Ct. 2479, 2489 n. 42, 86 L.Ed.2d 29 (1985). *See also Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 27, 28, 109 S.Ct. 890, 906, 907, 103 L.Ed.2d 1 (1989) (Blackmun, J., concurring) ("government may not favor religious belief over disbelief" or adopt a "preference for the dissemination of religious ideas"). In cases involving schoolchildren, the operative inquiry is whether an "objective observer" in the position of a student of the relevant age would "perceive official school support" for the religious activity in question.[18] *Board of Educ. of Westside Comm. Schools v. Mergens*, —— U.S. ——, ——, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990). *See also Wallace v. Jaffree*, 472 U.S. at 66 n. 9, 105 S.Ct. at 2495 n. 9 (Powell, J., concurring).

In *Board of Educ. of Westside Comm. Schools v. Mergens*, —— U.S. ——, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), the Supreme Court recently had occasion to employ the *Lemon* test in determining that the establishment clause does not, as a general matter, forbid a high school from allowing a religious student club, not sponsored by the school, to meet on school property immediately following afternoon classes.[19] Justice O'Connor, speaking for a plurality of the Court in this portion of her opinion, first found that permitting such meetings as part of an open forum policy that included non-discrimination against religious speech would have a secular purpose. *Board of Educ. of Westside Comm. Schools v. Mergens*, —— U.S. at ——, 110 S.Ct. at 2370–71. Second, she concluded that the primary effect of authorizing the club would not be to advance religion. Rejecting the board's contention that students and others would "perceive official school support for such religious meetings," Justice O'Connor found that an equal access policy would not convey a message of affiliation or endorsement, particularly given the "broad spectrum of officially recognized student clubs" at the school in question, and in light of the school's own ability to exercise "control over any impressions it gives its students."[20] *Id.* at ——, 110 S.Ct. at 2371–72. Third and finally, Justice O'Connor determined that the school's obligation to exercise "custodial oversight of the student-initiated religious group, merely to ensure order and good behavior," would not result in "excessive entangle-

**17.** Even where it has a secular purpose and does not result in excessive entanglement, official conduct that in any way endorses religion is invalid because it "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 595, 109 S.Ct. 3086, 3102, 106 L.Ed.2d 472 (1989) (Blackmun, J., joined by Stevens, J.), *quoting Lynch v. Donnelly*, 465 U.S. 668, 688, 104 S.Ct. 1355, 1367, 79 L.Ed.2d 604 (1984) (O'Connor, J., concurring).

**18.** Because children are usually more impressionable than adults, the Court has exercised special vigilance in monitoring compliance with the establishment clause in public school settings. *See Edwards v. Aguillard*, 482 U.S. 578, 583–84, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987).

**19.** In *Mergens*, several high school students challenged a board of education's refusal to allow them to form a Christian club that would meet on school premises during non-instructional time like other school groups. The Court found

that the board's decision violated the Equal Access Act, 20 U.S.C.A. §§ 4071–4074 (West 1990). Under the Act, "a public secondary school with a 'limited open forum' is prohibited from discriminating against students who wish to conduct a meeting within that forum on the basis of the 'religious, political, philosophical, or other content of the speech at such meetings.' " *Board of Educ. of Westside Comm. Schools v. Mergens*, —— U.S. at ——, 110 S.Ct. at 2364. The board argued that application of the Act to require the school in question to approve a religious student club would violate the establishment clause, given the particular circumstances of the case.

**20.** Justice Kennedy, in an opinion joined by Justice Scalia, would have rejected the *Lemon* criteria, and upheld the Equal Access Act against the board's establishment clause challenge on the basis that allowing student clubs to meet on school property after classes would not result in the "coercion" of any student to "participate in a religious activity." *Board of Educ. of Westside Comm. Schools v. Mergens*, —— U.S. at ——, 110 S.Ct. at 2377 (Kennedy, J., concurring). Although employing a different standard from either the plurality or Justice

ment between government and religion." *Id.* at ——, 110 S.Ct. at 2373. Indeed, she noted that a denial of access to "religious" speech might create greater entanglement problems by requiring "invasive monitoring" to ensure compliance with such a rule.[21] *Id.*

In this case, there is no question but that, under *Mergens,* permitting the Verbena United Methodist Church to conduct its baccalaureate service in the Verbena High School auditorium satisfies the "secular purpose" and "no excessive entanglement" prongs of the *Lemon* test. *See also Widmar v. Vincent,* 454 U.S. at 271–75, 102 S.Ct. at 275–77; *Jager v. Douglas County Sch. Dist.,* 862 F.2d at 830. Yet, given the particular facts of the case, a more difficult question is raised by the School Board's contention that the service would have the primary effect of advancing religion by virtue of an implicit message of official endorsement. *See County of Allegheny v. American Civil Liberties Union,* 492 U.S. at 595, 109 S.Ct. at 3102 (Blackmun, J., joined by Stevens, J.) ("[e]very government practice must be judged in its unique circumstances to determine whether it endorses religion") (internal quotation omitted).

The court agrees that a ceremony to honor a public high school's graduates is vulnerable to carrying with it an aura of school affiliation, perhaps to an even greater degree than a religious charity fundraising event, *see Gregoire v. Centennial Sch. Dist.,* 907 F.2d at 1369, or a prayer service, *Deeper Life Christian Fellowship v. Board of Educ.,* 852 F.2d at 677–78. As a general matter, this is attributable to the fact that, unlike prayer or fundraising, a commencement exercise is customarily a school-wide event within the province of

school officials.[22] The risk is particularly acute in this case because, until only two years ago, Verbena High School itself had, by longstanding tradition, conducted a similar religious "baccalaureate service" for its graduating seniors in this very locale, and because several officials at Verbena High School, either through their associations or actions, have contributed somewhat to an appearance that the school is connected with this year's Church-initiated service. The court has been presented with the following evidence: that the teacher who serves as senior class sponsor arranged for the students to order, through the school and from the same company that provided the students with printed invitations to the official diploma ceremony, similar-looking announcements for the baccalaureate service which indicate it is to take place in the auditorium and which make no reference to the fact it is an unofficial, privately-sponsored affair; that the school principal is a trustee of the Verbena United Methodist Church, and that he approved both Rev. Freeman's notion of using the auditorium for the service and the senior class sponsor's plan to order invitations to the service together with those to the diploma ceremony; and that the school secretary served on the Church's baccalaureate committee, and played a role in preparing the official program for the service.

Nevertheless, the circumstances surrounding the service are a far cry from those in *Jager* or *Allegheny,* where there was little doubt that the government, which in both cases sought to defend the challenged religious activities, had conveyed a clear, ringing message of official sponsorship. In *Allegheny,* there was little dispute among the Justices as to the fact that a nativity scene in the county courthouse constituted a government display

Marshall's concurrence in arriving at this conclusion, Justice Kennedy similarly relied on the fact that the Act precludes schools from sponsoring meetings by religious student groups or allowing school employees to lead or participate in them, and does not require school authorities to either encourage student involvement in religious clubs or even allow school employees merely to attend their meetings. *Id.*

**21.** In arriving at the holding in *Mergens,* Justice O'Connor relied to a significant degree on *Widmar v. Vincent,* 454 U.S. at 271–75, 102 S.Ct. at

275–77, where the Court had reached similar conclusions with respect to a state university's ability to offer its facilities to religious groups on the same terms available to other student organizations, without violating the establishment clause.

**22.** This impression of endorsement is reinforced by the *community*-wide flavor of graduation events. The service in this case is no exception; it is being organized by the community's major churches and will be attended by a significant portion of the town's population.

and therefore an endorsement of this symbol's message; rather, the case revolved around whether such a message was primarily a religious or a secular one. *See County of Allegheny v. American Civil Liberties Union,* 492 U.S. at 600–02, 109 S.Ct. at 3105 (plurality opinion by Blackmun, J., joined by Stevens, J.); *id.* at 625–28, 109 S.Ct. at 3118–19 (O'Connor, J., concurring); *id.* at 662–64, 109 S.Ct. at 3138 (Kennedy, J., concurring in part and dissenting in part). Similarly, in *Jager,* the Eleventh Circuit concluded that invocations prior to high school football games, permitted under a new, so-called "equal access plan," would still "convey[ ] a message that the school endorses the religious invocation." *Jager v. Douglas County Sch. Dist.,* 862 F.2d at 831. The court emphasized that the invocation would "occur[ ] at a school-sponsored event," adding that school clubs and the student government would be involved in selecting the speakers, and that teachers could deliver invocations under the plan. *Id.* To whatever extent students and others in Verbena may believe that the Board or school officials look favorably upon a baccalaureate service held in the auditorium, they are not, like the football fans in *Jager,* a captured audience, placed "in the position of participating in group prayer" simply by virtue of attending an official, otherwise secular school event. *Id.*

Rather, here as in *Mergens,* there are other significant factors which can be only understood as offering to the students the impression that the baccalaureate service is not school sponsored or endorsed. There is the fact that the school terminated its practice of officially sponsoring baccalaureate services several years ago, in 1989, and that last year's service was not conducted on school property. Similarly, none of the other five high schools in Chilton County will play host this year to such a service, but rather local churches in these other communities will continue to sponsor and house the events; therefore, observers of this ceremony in Verbena are more likely to be aware that it is an exception, motivated, at least on the Church's part, by space limitations. Had this year's ceremony followed more closely on the heels of the most recent school-endorsed service, the holding of the event in the school auditorium might have suggested more strongly a continuity with prior practice, and, accordingly, led the court to weigh the arguments on the establishment clause issue differently. The same might be true were similar services planned in the county's other high schools.

Under these circumstances, where the risk that observers might still view the baccalaureate service as officially supported remains within the control of the School Board, this court does not believe that the establishment clause requires that the Board deny the Church the use of the auditorium. Rather, the court agrees with Justice Marshall that the clause places on the Board the duty, albeit a heavy one, to take all additional measures reasonably necessary to disassociate itself from the activity. *See Board of Educ. of Westside Comm. Schools v. Mergens,* —— U.S. at ——, 110 S.Ct. at 2378 (Marshall, J., joined by Brennan, concurring).[23] Applying these principles, the court will therefore require the Board and Verbena High School to take steps to disclaim any official connection to the event in their communications with students, parents, school employees, and other members of the community.[24] *See id.* at

---

**23.** In rejecting the Board's claim that the establishment clause justifies the unconditional exclusion of the service from the auditorium, the court relies on Justice Marshall's concurrence in *Mergens* out of an abundance of caution. His opinion contains the strictest view of the limits imposed by the establishment clause to be found among the judges who concurred in the judgment in that case. Moreover, because the semblance of government support may arguably be more evident with regard to the baccalaureate service than the school clubs in *Mergens,* the measures necessary to avoid an establishment clause violation in this case may also be

more extensive than those incorporated in the Equal Access Act and referred to by the plurality in *Mergens.* For example, the service in this case appears to be the only large-scale graduation-related event planned in Verbena other than the official diploma ceremony. *Compare Board of Educ. of Westside Comm. Schools v. Mergens,* —— U.S. at ——, 110 S.Ct. at 2373 ("To the extent that a religious club is merely one of many different student-initiated voluntary clubs, students should perceive no message of government endorsement of religion").

**24.** Plaintiffs have recommended that such information be communicated via newspaper or ra-

—, 110 S.Ct. at 2372 ("To the extent a school makes clear that its recognition of [a] proposed club is not an endorsement of the views of the club's participants ... students will reasonably understand that the school's official recognition of the club evinces neutrality toward, rather than endorsement of, religious speech"). *See also Widmar v. Vincent,* 454 U.S. at 274 n. 14, 102 S.Ct. at 276–77 n. 14 (noting university handbook informed students "that the University's name will not 'be identified in any way with the aims, policies, programs, products, or opinions of any organization or its members' "). The Board must also ensure that no other school officials promote, lead, or participate in the service.[25] *Cf. Board of Educ. of Westside Comm. Schools v. Mergens,* — U.S. at —, 110 S.Ct. at 2373 (noting that Equal Access Act "prohibits school 'sponsorship' of any religious meetings ... which means that school officials may not promote, lead or participate in any such meeting"). Finally, school officials must be especially sensitive to the more subtle possibility that some students will pressure their classmates to attend the service. *Board of Educ. of Westside Comm. Schools v. Mergens,* — U.S. at —, 110 S.Ct. at 2382 (Marshall, J., concurring) (when the government "brings students together in a highly controlled environment every day ... and regulates virtually every aspect of their existence during that time," it may not "dismiss the problem of peer pressure as if the school environment had nothing to do with creating and fostering it"). The court's faith in the Board's ability to define appropriately its relationship to the service in the eyes of students and their families is bolstered by the plaintiffs' promises that they and others involved in the baccalaureate service will cooperate with the Board so as to make every effort not to portray the ceremony as a school-sponsored activity.

dio advertisements, as well as notices posted in the school and distributed to students and parents.

25. Plaintiffs have represented that no school officials will "participate" in the service, in the sense of doing any more than attending it as a member of the general audience.

Therefore, after carefully weighing these considerations, the court is of the opinion that permitting the Verbena United Methodist Church to rent and use the high school auditorium to conduct a church-sponsored baccalaureate service would not automatically or necessarily represent an endorsement of religion and therefore violate the establishment clause. The appropriate action on the part of the Board should have been to take measures to disassociate itself completely from the serve rather than to deny the Church the use of its facility. For this reason, the court concludes that plaintiffs have demonstrated a substantial likelihood that they will prevail on the merits of their first amendment claim.[26]

**B. Other Preliminary Injunction Factors**

The court need not be detained long by consideration of the three other prerequisites to plaintiffs' entitlement to a preliminary injunction. In addition to a substantial likelihood of ultimate success on the merits of their free expression claim, plaintiffs have also demonstrated that they would suffer irreparable harm—in other words, an injury that cannot be undone through monetary relief—if an injunction were not granted. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Med. Center. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir. Unit B 1981). *Accord Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976). In any event, that the auditorium appears to be the only facility in Verbena large enough to accommodate comfortably the service supports not only the court's preliminary assessment of the merits of plaintiffs' claim, but also its conclusion that

26. Because the court holds that the Board's denial of the Church's request to lease the high school auditorium would likely violate plaintiffs' rights to freedom of expression, it need not address their free exercise and equal protection claims at this stage of the litigation. *See Widmar v. Vincent,* 454 U.S. 263, 273 n. 13, 102 S.Ct. 269, 277 n. 13, 70 L.Ed.2d 440 (1981).

they will suffer irreparable harm absent an injunction allowing them to use the auditorium.[27]

The court is similarly persuaded that, because the loss of first amendment freedoms for even minimal periods of time constitutes irreparable injury, the threatened injury to plaintiffs clearly outweighs whatever harm the injunction might cause the School Board. Indeed, the Board has failed to articulate any negative impact on it that might result from an injunction requiring it to rent the auditorium to the Verbena United Methodist Church. Rather, the Board's establishment clause concerns focus on the potential harm to students, parents, and other local residents offended by or excluded from what, the Board argues, they might perceive as a state-sponsored religious service. As such, these concerns are actually relevant to the fourth prong of the court's preliminary injunction inquiry: whether the injunction would be adverse to the public interest. In light of the court's determination of the establishment clause issue in its discussion of the merits of plaintiffs' lawsuit, and its emphasis on the Board's ability and obligation to disassociate itself from the service, the court is also persuaded that an injunction allowing the service to go forward as planned in the Verbena High School auditorium would not be adverse to the public interest.

### III.

The court therefore concludes that the plaintiffs have satisfied the prerequisites for a preliminary injunction requiring the School Board to allow the Verbena United Methodist Church to rent and use the Verbena High School auditorium to conduct a baccalaureate service for graduating seniors. However, because it is also necessary, for the above reasons, that both plaintiffs and defendants take immediate, affirmative measures to avert the risk that the holding of the service on school grounds would transgress the establishment clause, the court will require both sides to submit, prior to the event, a joint report describing the particular steps they have taken or will take to ensure that the service does not appear to students, parents, or other members of the community to be affiliated in any way with the school.

Furthermore, the court emphasizes that its decision as to the Board's establishment clause defense is purely a preliminary and a deeply fact-based one. The court will of course revisit this difficult issue later in the litigation. But more importantly, the decision the court enters today should not be understood as implying in any way that the School Board may now return school-sponsored baccalaureate services to the Chilton County public schools. Rather because, as the court has noted, the inquiry into whether a government practice improperly "endorses" religion is usually subtle and fact-specific, the Board must maintain a continuous and sensitive vigil to ensure that its general practices or particular decisions regarding baccalaureate services or other religious uses of school property do not, at some future point in time, cross the difficult-to-define line separating equal access from official sponsorship.[28]

Finally, the court would add that it is sympathetic to the "first amendment tight rope" upon which the Chilton County School Board and other school boards find themselves "perched," *Bishop v. Aronov,*

27. While, technically speaking, the availability of alternative channels of communication should not be an operative factor in the court's consideration of a content-based regulation of speech, *see Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 556, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975) ("Whether petitioner might have used some other, privately owned, theater in the city for the production is of no consequence.... It does not matter for purposes of this case that the board's decision might not have had the effect of total suppression of the musical in the community"), it is one which, practically speaking, appears to have influenced the ultimate decisions in a number of public forum cases. *See* L. Tribe, American Constitutional Law, § 12–24, at 990–991 (2d ed. 1988).

28. Towards this end, the Board should solicit the involvement of parents, community members, school employees, and students in formulating policies to address specifically issues like the ones raised in this lawsuit. Such participation should have the added benefit of informing such persons of their rights to intervene in this litigation should they believe that neither the Board nor the plaintiffs adequately represent their interests that are at stake in the case.

926 F.2d at 1069, by virtue of their obligations, on the one hand, to respect the free speech rights of others, and on the other, to avoid violating the establishment clause. However, the Supreme Court has made clear that such difficulty does not detract from a school board's obligations to adhere to both of these constitutional strictures.

## ORDER AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the motion for preliminary injunction, filed by plaintiffs Verbena United Methodist Church, Delbert Freeman, and Julia Freeman on May 10, 1991, be and it is hereby granted;

(2) That defendants Chilton County Board of Education, its members, and its superintendent of education, and their officers, agents, servants, and employees and those persons in active concert or participation with them who receive actual notice of this order, be and they are hereby ENJOINED and RESTRAINED from failing to allow plaintiffs to rent the Verbena High School auditorium on May 26, 1991, for a "baccalaureate service"; and

(3) That by no later than 12:00 noon on May 24, 1991, plaintiffs and defendants shall submit a joint report describing in detail the actions they have taken or will take to ensure that the holding of the baccalaureate service in the Verbena High School auditorium does not violate the establishment clause of the first amendment to the United States Constitution, and to otherwise respond to the court's concerns regarding this issue, as expressed in the court's memorandum opinion.

The clerk of the court is DIRECTED to issue a writ of injunction.

In addition, the Board should make clear in the future that any students, families, churches, or other individuals or groups are free to organize their own commencement-related events, separate from both the official school gradua-

tion ceremony *and* the Church-sponsored baccalaureate service, in order to dispel any impression that the latter service is the *only* alternative to the official graduation.