**Maggie and Gary RANDALL, Plaintiffs,**

**v.**

**Charles R. PEGAN, as Superintendent of the Letchworth Central School District, and Board of Education of the Letchworth Central School District, Gainsville, New York, a Governmental Body of the State of New York, Defendants.**

**No. CIV–91–6234T.**

United States District Court, W.D. New York.

June 14, 1991.

David G. Jay, New York Civ. Liberties Union Foundation, Buffalo, N.Y., Margaret Carroll, Kronish, Lieb, Weiner & Hellman, New York City, for plaintiffs.

Paul J. Yesawich, III, Harris, Beach & Wilcox, Rochester, N.Y., for defendants.

## DECISION AND ORDER

TELESCA, Chief Judge.

Plaintiff Gary Randall and his daughter Maggie, a graduating senior at Letchworth Central High School, commenced this action pursuant to 42 U.S.C. § 1983 seeking principally to enjoin the Letchworth Central School District and its Superintendent, defendant Charles Pegan, from sponsoring,

promoting or "influencing" a religious baccalaureate service for its high school graduates on June 16, 1991. The case is presently before the court on plaintiffs' motion for a preliminary injunction and defendants' cross motion to dismiss, both of which were returnable on June 14, 1991. For the reasons discussed below, the plaintiffs' motion for a preliminary injunction and the defendants' cross motion to dismiss are denied.

## BACKGROUND

The facts of this case are derived from the pleadings and the affidavits submitted in support of the plaintiffs' motion for a preliminary injunction and the defendants' cross motion to dismiss.

For many years, a religious baccalaureate service has been held in connection with the commencement exercises for the Letchworth Central High School.[1] The purpose of the baccalaureate service is "to honor graduating students and their families, [to] bring them together to reflect upon their years at school and to challenge them to use their talents to further society's goals."[2] Traditionally, the high school principal and the officers of the senior class arranged the service by choosing the speakers, typically local ministers and pastors, and by preparing the program.[3]

In accordance with this long standing tradition, formal invitations were distributed in March of this year notifying the high school's graduating seniors and their parents that the annual baccalaureate service would be held on Sunday, June 16, 1991 at 8:00 p.m. These invitations were prepared by a private entity and were purchased by those seniors of the Letchworth High School interested in sending them to family and friends.[4]

In May of 1991, Maggie Randall and the New York Civil Liberties Union (the "NYCLU"), at her request, contacted defendant Pegan and asked that he cancel the baccalaureate service on the grounds that it violated their First and Fourteenth Amendment rights against state establishment of religion.[5] Although he initially refused, the Superintendent, along with the defendant school board, eventually decided to cancel the service on May 28, 1991 and thereafter adopted a public resolution on June 10, 1991 formally announcing that it was no longer involved in sponsoring the baccalaureate. The defendants also canceled their then pending order for programs which they had submitted prior to the initiation of the instant controversy.[6]

In response to the defendants' withdrawal of their sponsorship of the event, students from the "Purposeful Life Club," a nondenominational study group, approached Superintendent Pegan and informed him that they would be interested in conducting and sponsoring the service.[7] Although the group initially considered holding the service in a church, it later concluded that such a forum would be inappropriate because it would suggest an affiliation with a particular religious view.[8] They therefore decided to conduct the baccalaureate in the school auditorium as originally had been planned and, in accordance with district policy, completed and submitted the requisite building request form, along with $50, to the school board.[9] The group thereafter made invitations for the event and, at their own expense, delivered them to the students and their families.

1. Aff. of Gary Randall dated June 10, 1991, at ¶ 3; Aff. of Charles Pegan dated June 13, 1991, at ¶ 11.

2. Pegan Aff. at ¶ 11.

3. Id. at ¶ 12.

4. Id. at ¶ 13; Aff. of Pamela Popp dated June 13, 1991, at ¶ 17.

5. Aff. of Maggie Randall dated June 10, 1991, at ¶¶ 3, 4, & 6.

6. Pegan Aff. at ¶¶ 5, 14; Aff. of Thomas Kelleher dated June 13, 1991, at ¶ 2.

7. Id. at ¶¶ 6–8; Popp Aff. at ¶¶ 3–5; Aff. of Julie Hallopeter dated June 13, 1991, at ¶¶ 5–7.

8. Popp Aff. at ¶ 6.

9. Popp Aff. at ¶ 8. According to defendant Pegan, a fee is generally charged to school groups to cover the costs incurred by the District during clean up and oversight of the activity in question. See Pegan Aff. at ¶¶ 16–17.

As presently constituted, the baccalaureate service will be conducted and controlled by students in the Purposeful Life Group and a number of religious speakers, one of whom is nondenominational, will participate.[10]

## DISCUSSION

### 1. *Standard for Preliminary Injunction*

In order to prevail on their motion for a preliminary injunction, the plaintiffs must demonstrate (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor. *Wallace Intern. Silversmith v. Godinger Silver Art*, 916 F.2d 76, 78 (2d Cir.1990).

It is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Parents' Assoc. of P.S. 16 v. Quinones*, 803 F.2d 1235, 1242 (2d Cir.1986) (citations omitted). Accordingly, if the plaintiffs can show that the baccalaureate service is a violation of the Establishment Clause, they will have demonstrated both an irreparable injury as well as a likelihood of success on the merits.

### 2. *Establishment Clause*

The First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend I. In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court refined the principles underlying this proscription into a three part test. "Under the *Lemon* analysis, a statute or practice which touches upon religion, if it is to be permissible under the Establishment Clause, must have

a secular purpose; it must neither advance nor inhibit religion in its principal or primary effect; and it must not foster an excessive entanglement with religion." *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 109 S.Ct. 3086, 3100, 106 L.Ed.2d 472 (1989). Since *Lemon*, the Court has "particularly relied on ... [this three prong test] in [virtually] every case involving the sensitive relationship between government and religion in the education of ... children." *Grand Rapids School Dist. v. Ball*, 473 U.S. 373, 383, 105 S.Ct. 3216, 3222, 87 L.Ed.2d 267 (1985); *cf. Edwards v. Aguillard*, 482 U.S. 578, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987). Whether a particular state action violates the *Lemon* test in this context depends upon the "unique circumstances" involved. *County of Allegheny*, 109 S.Ct. at 3102.

In *Board of Educ. of Westside Comm. Schools v. Mergens*, — U.S. —, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990), the Court once again employed *Lemon*'s three pronged inquiry to determine whether the establishment clause, as a general matter, forbids a high school from allowing a religious student club, not sponsored by the school, from meeting on school property immediately following afternoon classes.[11] A plurality of the Court ultimately concluded that it did not. Justice O'Connor, speaking for a plurality, first found that permitting such meetings as part of an open forum policy that included nondiscriminatory access to religious speech would have a secular purpose. *Id.*, 110 S.Ct. at 2370–71. Second, she concluded that the primary effect of authorizing the club would not be to advance religion. Rejecting the school board's contention that students and others would "perceive official school support for such religious meetings," Justice O'Connor found that an equal access policy would not convey a message of affiliation or endorsement, particularly given the "broad spec-

---

**10.** Popp Aff. at ¶¶ 12–14.

**11.** The particular issues before the Court in *Mergens* revolved around the proper construction and constitutionality of the Equal Access Act, 20 U.S.C. §§ 4071, *et seq.* The Equal Access Act, which was passed by Congress after the Court's decision in *Widmar* (see footnote 1) and which

is predicated upon the reasoning in that decision, prohibits a secondary school with a "limited open forum" from discriminating against students who wish to conduct a meeting within that forum on the basis of "religious, political, philosophical, or other content of the speech at such meetings."

trum of officially recognized student clubs" at the school in question, and in light of the school's own ability to exercise "control over any impressions it gives its students." *Id.* Third and finally, Justice O'Connor determined that the school's obligation to exercise "custodial-oversight of the student-initiated religious group, merely to ensure order and good behavior," would not result in excessive entanglement between government and religion. *Id.* at 2373. Indeed, she noted that a denial of access to "religious" speech might create greater entanglement problems by requiring "invasive monitoring" to ensure compliance with such a rule. *Id.*

Applying the teachings of *Mergens* to the facts of this case, the defendants' leasing of its school auditorium to the Purposeful Life Group clearly does not violate any of the prongs of the *Lemon* test. First, as defendant Pegan's affidavit makes clear, the school board maintains an "open forum policy" towards all civic, private and student groups, both religious and nonreligious, which seek to use its facilities during noninstructional hours. *See* Pegan Aff. at ¶¶ 16–18 & Exhibit C;[12] *cf. Verbena United Methodist Church v. Chilton County Bd. of Educ.*, 765 F.Supp. 704 (M.D.Ala. 1991) (school auditorium found to be state designated public forum where evidence showed that Board's policy was to allow virtually any group to lease it). As the Court noted in *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), such a nondiscriminatory "equal access" policy has a secular purpose insofar as it is presumptively based on a notion of neutrality towards all views rather endorsement of one particular view.[13] 102 S.Ct. at 275; *see also Mergens*, 110 S.Ct. at 2370–71.

Second, allowing the baccalaureate service to occur in school auditorium under the circumstances of this case will not have the primary effect of advancing religion. In cases such as this which involve schoolchildren, the operative inquiry in this regard is whether "an objective observer in the position of a secondary school student will perceive official school support" for the religious activity in question. *Mergens*, 110 S.Ct. at 2371; *see also Wallace v. Jaffree*, 472 U.S. 38, 66 n. 9, 105 S.Ct. 2479, 2495 n. 9, 86 L.Ed.2d 29 (1985).

At this juncture, the school board has already formally and publicly dissociated itself from the baccalaureate service, has canceled its prior order for programs and has refused to lend any financial support, either direct or indirect, to assist the Purposeful Life Group in its sponsorship of the event. In addition to these actions, the defendants, along with members of the Purposeful Life Group, have also indicated that while board members and faculty have been invited to attend the baccalaureate, no "district personnel are involved in any aspect of the service, either in their capacities as District employees or ... in their personal, individual capacities." Pegan Aff. at ¶ 15; *see also* Popp Aff. at ¶ 14; *see Mergens*, 110 S.Ct. at 2372 ("To the extent a school makes clear that its recognition of ... proposed club is not an endorsement of the views of the club's participants, students will reasonably understand that the school's official recognition of the club evinces neutrality toward, rather than endorsement of, religious speech.") Taken together, such conduct by all those involved in the baccalaureate is sufficient to dispel any impression in the minds of students of state sponsorship, *cf. Verbena, supra,* and, at any rate, is a far cry from those types of practices and circumstances which have been found in other cases to run afoul of the Establishment Clause. *Cf. Weisman v. Lee*, 908 F.2d 1090 (1st Cir. 1990) (benediction delivered by clergy at public school graduation violates Establishment Clause), *cert. granted,* —— U.S. ——,

---

**12.** In addition to the Purposeful Life Group, the Students Against Drunk Driving ("SADD"), the Ski Club, the Chemically Free Athletes Group, the Future Business Leaders Club and the Future Farmers Club are all noncurricular student organizations which have access to District buildings.

**13.** In *Widmar,* the Court invalidated, on free speech grounds, a state university regulation that prohibited student use of school facilities "for purposes of religious worship or religious teaching."

111 S.Ct. 1305, 113 L.Ed.2d 240; *Jager v. Douglas Cty School Dist.*, 862 F.2d 824 (11th Cir.1989) (religious invocations prior to home football games which were sponsored by school and which were delivered by teachers violates prohibition against church and state).

I need devote little discussion to the applicability of *Lemon*'s third and final prong. Suffice it to say that the minimal role the defendants will have in the "custodial oversight" of the baccalaureate service will not cause an impermissible entanglement between church and state. *Mergens*, 110 S.Ct. at 2373. Because the plaintiffs have failed to demonstrate on the record before me any grounds for preliminary injunctive relief, this motion is denied.

### 3. *Defendants' Motion to Dismiss*

In support of their motion to dismiss, the defendants argue that they are both constitutionally as well as statutorily compelled under the Equal Access Act to permit the Purposeful Life Group to hold the baccalaureate service in the school auditorium. However, because the plaintiffs have not had the requisite opportunity to respond to defendants' motion and further because the record is incomplete at this stage, the defendants' motion to dismiss is denied as premature.

ALL OF THE ABOVE IS SO ORDERED.